771 N.W.2d 213 (2009)
17 Neb. App. 807
Barry A. DONSCHESKI, appellant and cross-appellee,
v.
Sherry A. DONSCHESKI, now known as Sherry A. Norris, appellee and cross-appellant.
No. A-08-1131.
Court of Appeals of Nebraska.
July 28, 2009.
*216 Stephanie Weber Milone, Omaha, for appellant.
Stephen D. Stroh and Ryan D. Caldwell, of Bianco, Perrone & Stroh, L.L.C., Omaha, for appellee.
INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
SIEVERS, Judge.
Barry A. Donscheski appeals, and Sherry A. Donscheski, now known as Sherry A. Norris, cross-appeals from the decision of the district court for Douglas County denying both parties' requests for modification of child custodyincluding Sherry's request to remove the minor child to Georgia. The result of the district court's order was the continuation of a June 2007 modification order in which the parties had agreed to a joint custody arrangement. Because the parties are no longer able to work together as needed for a joint custody arrangement, particularly one at this distance, we find that there has been a material change in circumstances warranting a modification of the joint custody arrangement. We therefore reverse the decision of the district court and remand the cause to such court with directions to consider the best interests of the child, including the child's in camera testimony regarding preference, which was error for the trial court not to hear and consider, and then to award sole custody to either Barry or Sherry and to make the other appropriate determinations that necessarily follow from its determination.

FACTUAL AND PROCEDURAL BACKGROUND
Barry and Sherry were married on May 22, 1992, and are the parents of Miller Donscheski, born May 8, 1996. A decree dissolving the parties' marriage was filed *217 on September 29, 1998. In the decree, the district court adopted the parties' "Property Settlement and Custody Agreement" and ordered that Barry and Sherry were to have joint custody of Miller, with Miller's primary residence being with Sherry, subject to Barry's rights to reasonable and liberal parenting time. Barry was ordered to pay child support in the amount of $400 per month.
In April 2006, Barry filed an application to modify the decree regarding child custody, alleging a material change in circumstances and asking the court to specifically set out parenting time. Sherry filed her answer and cross-petition in May 2006, also alleging a material change in circumstances, in that her husband obtained a job in Georgia. Sherry requested permission to remove Miller from Nebraska and asked the district court to award Barry reasonable visitation. In an amended application to modify, Barry asked the court to award him sole custody of Miller, subject to Sherry's reasonable rights of visitation. And in an amended answer and cross-petition, Sherry asked the district court to award her sole custody of Miller, subject to Barry's reasonable rights of visitation. Prior to trial, Barry and Sherry reached an agreement, which was adopted by the district court in its order of modification filed on June 4, 2007.
The June 2007 order of modification provided that Sherry's move to Georgia constituted a material change in circumstances sufficient to warrant a modification of the decree. The order also stated: (1) Miller shall not be removed from Nebraska; (2) Barry and Sherry shall have "shared custody and parenting time"; and (3) no child support shall be paid by either party, because the parties agreed to share custody and travel expenses for Miller between Nebraska and Georgia. Other terms of the order are not relevant in this appeal, and we omit such.
The parenting plan adopted by the district court at that time provided: (1) Miller shall attend school in Nebraska; (2) Sherry shall have Miller one weekend per month, preferably when there is an extended weekend when the child is out of school; (3) each party shall have specified holiday visitation; (4) Sherry shall have Miller for the school spring break each year; (5) beginning in 2008, Barry shall have exclusive possession of Miller for up to 3 weeks each summer, and Sherry shall have exclusive possession of Miller the remainder of the summer; (6) the parties shall equally divide Miller's Christmas break, alternating that portion of the break which contains Christmas Day; and (7) each party shall have reasonable telephone visitation with Miller.
Five months later, on November 2, 2007, Sherry filed an application to modify the June order. Sherry alleged that since the June order, there has been a material change in circumstances, in that (1) Barry has assumed the position of determining all contact by Sherry with Miller; (2) the parties have been experiencing ongoing conflict and disputes concerning Sherry's contact and parenting time with Miller; (3) Sherry, her husband, and her stepdaughters reside in Georgia; and (4) Miller has expressed his desire and preference to reside with Sherry on a full-time basis. Sherry asked the court to award her full custody of Miller, to allow her to remove Miller to Georgia, and to award her child support. She also asked that the district court's order specify Barry's parenting time with Miller.
Barry filed his answer and counterclaim on December 18, 2007, also alleging that there has been a material change in circumstances since the June order, such material change relating to communication, *218 arrangements for parenting-time exchanges, the parties' respective parenting time, financial provisions, and the contact between Barry and Miller while Miller is in Sherry's care. Barry asked the court to award him full custody of Miller, to specify Sherry's parenting time, and to determine child support issues. On May 29, 2008, Barry filed an application and affidavit for citation in contempt, alleging that Sherry has refused to pay certain travel, medical, and activity expenses for Miller pursuant to the June 2007 order.
Trial was held on July 31, 2008. Barry, Sherry, and their new spouses all testified. All parties agree that Barry and Sherry can no longer communicate effectively. Barry and Sherry do not speak to each other, and all communications go through Barry's wife. The parties cannot agree on when Miller should visit Georgia. Sherry accuses Barry of interfering with her contact with Miller when Miller is with Barry, and Barry accuses Sherry of the same when Miller is with her. In sum, the parties agree that the joint custody arrangement is no longer working. The district court denied Sherry's request that Miller be interviewed in camera, and thus Miller did not testify at trial.
The district court's unsigned and unfiled journal entry dated July 31, 2008, states in relevant part: "Court denies [Sherry's] motion for removal and change of custody. Court grants [Barry's] motion and awards sole custody of [Miller] to [Barry]. Court's determination as to parenting time and child support taken under advisement."
In its order signed on September 8, 2008, and filed on September 9, the district court found that there had been no material change in circumstances since the June 2007 modification and therefore denied Sherry's application to modify. The district court's journal entry dated September 8, 2008, stated: "Nothing further under advisement." On September 9, Barry filed a motion to alter or amend judgment, alleging that the court failed to rule on Barry's applications to modify and for contempt.
In its order filed on October 15, 2008, the district court found that in its September order, it failed to address (1) Barry's counterclaim seeking modification and (2) Barry's contempt citation and request for fees. The district court again found that there had been no material change in circumstances since the June 2007 modification and therefore denied Barry's application to modify. The district court stated that "the stipulated modification of June 4, 2007 remains in full force and effect and is otherwise unchanged by these proceedings." The district court ordered Sherry to pay $292.18 for Miller's expenses and $250 as reasonable attorney fees relating to the contempt citation. The district court ordered that except as modified, the September order remains otherwise in full force and effect. Barry appeals, and Sherry cross-appeals, the October 15, 2008, order.

ASSIGNMENTS OF ERROR
Barry alleges that the district court erred in (1) entering a written order that deviated from, and directly contradicted, the order the court previously had made in the form of a journal entry at the conclusion of trial; (2) not further modifying the decree to award sole custody to Barry and in not further modifying the decree to adjust parenting time to coordinate with Miller's school calendar; and (3) not awarding Barry attorney fees.
On cross-appeal, Sherry alleges that the district court erred in (1) not allowing Miller to testify through an in camera interview and/or in open court, (2) denying a modification of the district court's previous *219 order of June 2007 modifying the decree, and (3) denying removal of Miller to Georgia.

STANDARD OF REVIEW
Child custody determinations are initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. Mann v. Rich, 16 Neb.App. 848, 755 N.W.2d 410 (2008).

ANALYSIS

Effect of Difference Between Journal Entry and Final Order.
Barry argues that the district court's written orders of September 9 and October 15, 2008, maintaining joint custody, deviated from, and directly contradicted, the order the court previously had made in the form of a docket entry dated July 31, 2008, at the conclusion of trial granting sole custody to Barry. Barry argues that the July 31 docket entry is an order that cannot be arbitrarily modified.
In support of his argument, Barry cites Neb.Rev.Stat. § 25-914 (Reissue 2008) ("[e]very direction of a court or judge, made or entered in writing and not included in a judgment, is an order"). This statute has been in effect for well over a century, but no appellate decision has ever discussed it. Neb.Rev.Stat. § 25-1301(1) (Reissue 2008) provides that a judgment is "the final determination of the rights of the parties in an action." Section 25-1301(2) and (3) respectively provide that a judgment is not rendered until it is signed by the court, or a judge thereof, and that a judgment is not entered until it is file stamped and dated by the clerk of the court. This court, in Ebert v. Nebraska Dept. of Corr. Servs., 11 Neb.App. 553, 558-59, 656 N.W.2d 634, 639 (2003), said: "The components of a series or collection of statutes pertaining to a certain subject matter which are in pari materia may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and sensible."
Consequently, §§ 25-914 and 25-1301 specify the range of actions available to a judge by defining, first, an order which, by definition, is not part of a judgmentand second, a judgmentwhich must be a final determination of the rights of the parties in an action, as well as being both rendered and entered, before it is a final, appealable order. See State v. Brown, 12 Neb.App. 940, 687 N.W.2d 203 (2004). Because the July 31, 2008, journal entry was neither signed nor file stamped, it did not constitute either a rendition of judgment or an entry of judgment. Furthermore, the July 31 journal entry was also not a final order, because it did not dispose of all issuesthe district court specifically left the issues of parenting time and child support under advisement. See Slaymaker v. Breyer, 258 Neb. 942, 607 N.W.2d 506 (2000) (order is final when no further action of court is required to dispose of pending cause; however, if cause is retained for further action, order is interlocutory). Thus, Barry's argument is without merit, because the journal entry is quite meaningless for our purposes; it is the final order of October 15 which we review, and which superseded the interlocutory order contained in the journal entry.

Did District Court Err in Denying Removal to Georgia?
Sherry argues that the district court erred in denying the removal of Miller to Georgia. In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a *220 legitimate reason for leaving the state. Wild v. Wild, 15 Neb.App. 717, 737 N.W.2d 882 (2007). After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her. Id.
Sherry suggests that because she already lives in Georgia, and because such was contemplated at the time of the June 2007 agreed-upon modification, the "legitimate reason" prong of a removal case is no longer at issue. We agree because the parties effectively agreed in June 2007 that there was a legitimate reason for her move to Georgia. However, Sherry is not the only "custodial" parent, because currently Barry and Sherry have "shared custody" although they are in different statesa considerable distance apart. We take the term "shared custody and parenting time," as used in the June 2007 order, to encompass both legal and physical custody. Both parents agree that the current arrangement is not working. Thus, we find that the question is now whether a material change in circumstances has occurred that requires modification of the joint custody arrangement. If such modification is warranted, the district court would necessarily need to "pick a parent" for Miller, after considering his best interests. Thus, in order for Sherry to be able to take Miller to Georgia, she would have to establish that it is in Miller's best interests that she be his custodial parent, because the legitimate reason prong of the test for removal has already been established by way of the earlier modification.
Therefore, the analytical framework for this case, assuming that there is a material change in circumstances, is that the factors used in removal cases now come into playwhich, at their core, all go to the child's best interests. In short, we acknowledge that the factors for determining a child's best interests are functionally similar in both removal and modification cases, although each type of case has a different predicatea legitimate reason for the move in the former and a material change in circumstances or parental unfitness in the latter. That said, we turn to the question of whether there is a material change in circumstances.

Is Joint Custody Still Appropriate?
Both Barry and Sherry argue that the district court erred in denying a modification of the June 2007 order, and each argues that he or she should have been awarded sole custody of Miller.
Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. Tremain v. Tremain, 264 Neb. 328, 646 N.W.2d 661 (2002). The party seeking modification of child custody bears the burden of showing a change in circumstances. Id. A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. Id. Neither party in this case accuses the other of being unfit; therefore, the question is whether there has been a material change in circumstances. The district court found no material change in circumstances warranting a modification of the joint custody arrangement. We disagree.
Both parties agree that they can no longer communicate effectively. Barry and Sherry do not speak to each other, and all communications go through Barry's wife. The parties cannot agree on when Miller should visit Georgia. Sherry accuses Barry of interfering with her contact with Miller when Miller is with Barry, and *221 Barry accuses Sherry of the same when Miller is with her. Thus, there has clearly been a material change in circumstances that was not anticipated when the court approved the June 2007 modification, because no court would approve joint custody under circumstances that the parties describe. We have said that when parents are unable or unwilling to execute parenting duties jointly, the result is that one or the other must be given primary responsibility for the child's care. See Coffey v. Coffey, 11 Neb.App. 788, 661 N.W.2d 327 (2003). This is quite clearly such a case. Accordingly, the trial court abused its discretion in failing to find that there was a material change in circumstances.

Absence of Evidence of Miller's Preference.
In determining which parent should be awarded custody, the district court is to consider the child's best interests. The best interests of the child require a parenting arrangement which provides for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress. Neb.Rev.Stat. § 43-2923(1) (Reissue 2008). Based on our review of the record, it is unclear which custodial arrangement would be in Miller's best interests. However, the determination of this would likely have been aided by Miller's testimony, and Sherry has assigned error to the trial court's refusal to allow such testimony.
Sherry alleged in her application to modify, and again in her answer to an interrogatory which was in evidence, that Miller's preference was to live in Georgiaand while these allegations do not prove that such is the fact, they do put the trial court on notice of what the nature of the evidence might be. The record indicates that Sherry filed a motion to have the court conduct an in camera interview with Miller. While such motion is not in our record, there is no dispute that such motion was filed. Part way through the trial, and pursuant to her motion, Sherry asked the court to conduct an in camera interview with Miller. Barry opposed the motion, arguing that Sherry had not met the threshold requirement of a legitimate reason for the move or shown a material change in circumstances since the June 2007 order. As said above, proof of a legitimate reason was not needed, and there quite clearly was a material change in circumstances, and thus Barry's objections on these grounds were not well takenparticularly after all the other evidence had been adduced. The district court stated that it would not rule on the motion until it heard all of the evidence. At the end of the trial, Sherry again requested that the court conduct an in camera interview with Miller. The court declined to interview Miller, stating:
[B]ased on all of the evidence that I've heard from both sides, ... the Court finds no reasonable basis to interview the child at this point. So I will not interview the child. I'm not going to bring him in any more in the middle than he already is. It's not necessary.
The Nebraska Supreme Court has said that "[w]hile the wishes of the child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, his preference is entitled to consideration." Miles v. Miles, 231 Neb. 782, 785, 438 N.W.2d 139, 142 (1989). Sherry has alleged that Miller's preference is to live in Georgia. At the time of the trial, Miller was 12 years old and was going to be a seventh grader in the fall. The evidence was that he received mostly A's and B's in school. Miller is of sufficient age and intelligence to be heard, and *222 his preference, whatever that may be, as well as his reasoning should have been heard and considered. Although we are not anxious to see children dragged into custody battles, in some cases, it may be necessary, and not inappropriate, particularly when a child is of Miller's age and apparent intelligence. The trial court's decision on Sherry's motion to interview Miller was an abuse of discretion.

Attorney Fees.
Barry argues that the district court erred in not awarding him attorney fees. The district court's decision on a request for attorney fees is reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. Carter v. Carter, 276 Neb. 840, 758 N.W.2d 1 (2008).
The district court did order Sherry to pay Barry $250 in attorney fees regarding the contempt citation. However, Barry was not awarded any attorney fees in connection with the modification proceeding. Having reviewed the record in this case, and taking into consideration our result in this appeal, we find no abuse of discretion by the district court. We affirm this portion of the district court's order.

Resolution.
Because the parties are no longer able to work together, we find that there has been a material change in circumstances warranting a modification of the joint custody arrangement, and the evidence shows that an award of custody to one of the parents is required. We therefore reverse the decision of the district court and remand the cause back to the district court with directions to consider the best interests of the child, including the child's in camera testimony regarding his preference and his reasoning for such, and to award sole custody to either Barry or Sherry. Because the parties have had considerable difficulty in agreeing on visitation times, as well as the travel arrangements, the district court should set out a specific visitation schedule for the noncustodial parent, taking into consideration Miller's school calendar. And of course, since one parent will get sole custody, the district court should also make child support determinations.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.