IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


POESSNECKER V. ZEMAN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


PAMELA J. POESSNECKER, APPELLEE,

V.

MICHAEL P. ZEMAN, APPELLANT.


Filed January 27, 2015.    No. A-14-651.


Appeal from the District Court for Hall County: JAMES D. LIVINGSTON, Judge. Affirmed in part, and in part reversed and remanded with directions.

Mitchell C. Stehlik, of Lauritsen, Brownell, Brostrom & Stehlik, P.C., L.L.O., for appellant.

No appearance for appellee.


MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

MOORE, Chief Judge.

Michael P. Zeman appeals from an order of the district court for Hall County, Nebraska, which denied his application to modify custody of his son Tyler. He also asserts that the district court erred when it reduced his parenting time. We affirm the district court's denial of Michael's application to modify custody, but we reverse the portion of the order that modified Michael's parenting time and remand with directions to reinstate the parenting time afforded Michael in the previous orders.

### FACTUAL BACKGROUND

Michael and Pamela J. Poessnecker are the parents of a son, Tyler, born in 2003. Following a paternity action, the district court entered an order on March 10, 2006, in which it awarded the care, custody, and control of Tyler to Pamela. Michael was awarded the following

- 1 -

parenting time: (a) every other weekend from 5:00 p.m. Friday to 5:00 p.m. Sunday; (b) every Monday and Thursday of each week from 5:30 p.m. until 7:30 p.m.; and (c) holiday visitation pursuant to *Wilson v. Wilson*, 224 Neb. 589, 399 N.W.2d 802 (1987). The court also ordered Michael to pay child support to Pamela, to pay one-half of Tyler's child care expenses, and to provide health insurance for Tyler.

Both parties later moved to modify the paternity order. Following the parties' oral stipulation, the court entered an order on April 3, 2012. The court's order stated that a material change in circumstances had occurred with regard to parenting time since the 2006 order. The court awarded Michael extended summer parenting time for 14 consecutive days in both June and July beginning in 2012.

On March 13, 2013, Michael filed a complaint for modification in which he sought primary physical custody of Tyler and a corresponding reduction in his child support obligation. Michael alleged the following reasons to support his claim that a material change in circumstances had occurred: (1) Tyler's living situation with Pamela was substandard; (2) Tyler had lived in multiple locations with Pamela since the 2012 modification order; (3) Pamela had lived with multiple different persons since the modification order; and (4) the custody arrangement in place at the time had caused Tyler difficulties in school and in his development.

On July 15, 2013, in response to Michael's motion for temporary orders, the district court entered an order which granted Michael and Pamela shared custody of Tyler. The order approved the parties' agreement which provided that they would alternate custody of Tyler on a 7-day basis, Sunday to Sunday, during Tyler's summer break from school. During the school year, Pamela would have custody every Monday until Wednesday morning, Michael would have custody from Wednesday morning until Friday morning, and the parties would alternate custody every weekend.

Prior to trial, the court ordered the parties to engage in mediation. On January 6, 2014, the parties attended mediation and reached an agreement as to Tyler's "visitation." Specifically, the agreement stated that Pamela and Michael would share physical custody of Tyler. Each party would have custody of Tyler on an alternating 7-day schedule with the exchanges to take place on Sunday evenings. Both Pamela and Michael signed this agreement.

On June 19, 2014, the district court held a trial on Michael's complaint. At the outset of the trial, the court interviewed Tyler in chambers. During this interview, Tyler spoke about his experience living with each of his parents. Tyler stated that he did not like the 50/50 parenting arrangement because he did not get to see his mother as much as he liked. Tyler requested that the court order the parenting schedule to return to "the way it was a long time ago". While he could not recall the specifics of that schedule, Tyler stated that he did not enjoy the 6 days away from either parent. He also indicated the switching back and forth that was necessary with the 50/50 arrangement was hard on him.

Tyler's school records were admitted into evidence at trial. Tyler generally receives good grades, but he is on an individualized education plan for speech therapy. Additionally, a number of teacher reports state that Tyler has "meltdowns" and becomes easily frustrated when he is not able to think or do something quickly. Tyler has been diagnosed with ADHD and has taken

medication for the disorder. Pamela has been the parent who has attended to Tyler's educational and medical needs. Pamela has also arranged for counseling for Tyler.

Michael is employed as a welder and has a work schedule of 7 a.m. to 5:30 p.m. Monday through Friday. If he has parenting time with Tyler while he is working, his girlfriend, Deanna Orlando, helps provide for Tyler's care. Orlando also works full-time and has a work schedule that is similar to Michael's. When neither Michael nor Orlando is able to provide for Tyler's care, Tyler stays at Michael's residence alone. Michael testified that Tyler always has access to a cellphone while he is at home alone and they have discussed what Tyler should do in the case of an emergency. During his testimony, Michael testified that he believed Tyler was of sufficient maturity to stay home alone.

Michael and Orlando have been in a relationship for approximately 6 years, although they have separated a few times during this period. They currently live together in the basement of a home in Grand Island which Michael rents. Orlando had frequently stayed overnight with Michael prior to moving into his residence, but officially moved into the home approximately two weeks prior to trial. Michael and Orlando sleep in the same bedroom while Tyler has his own room in this residence.

Because of his third DUI conviction in 2007, Michael has had his driver's license suspended for 15 years. At the time of trial, Michael believed that he had 8 years remaining on that suspension. Michael stated that he has never driven during the suspension. To get himself to work and Tyler to school, Michael relies on Orlando to drive. When Orlando is not able to provide transportation, Michael rides his bike or takes a taxi. Tyler also takes a taxi home from school when there is no other available transportation while Michael has parenting time. Michael stated that "everybody in the cab company knows Tyler" and the family's situation.

During his testimony, Michael was critical of the care Pamela had provided to Tyler. Specifically, Michael emphasized that Pamela had moved the family numerous times during the previous two years and he believed that some of Tyler's living conditions were substandard. Michael also criticized Pamela for taking Tyler off his ADHD medication without a doctor's recommendation. Michael believed that Tyler should remain on the medication and they should further consult with the doctor as to how to remove Tyler from it.

Pamela acknowledged that she had to move numerous times since 2012. She testified that her living situations since 2012 have included a few months in a friend's basement, two separate periods of time in the home of the mother of an ex-boyfriend, a period of time in an apartment from which she was evicted for falling behind on rent, and a few weeks living with Michael. During this period of numerous moves, Tyler did not always have his own bedroom; he had to share with his teenage brother on occasion and once shared a bedroom with both his brother and his mother while they stayed at the home of one of Pamela's friends. In September 2013, Pamela was able to purchase a trailer home in Doniphan in which Tyler and his brother have their own bedrooms. Pamela acknowledged that her life was in chaos during this period of constant moving, but she contended that it did not negatively affect Tyler. Pamela testified that her life has now stabilized and both of her children were able to stay at their same schools.

At the time of trial, Pamela was unemployed. Her previous employment was as a waitress and bartender at a bar at Fonner Park during horse racing season. Pamela testified that she works

at Fonner Park during every racing season, which extends from approximately January to May. In addition to this seasonal employment, Pamela testified that she has worked several odd jobs which included cleaning homes and picking up irrigation pipe. Pamela admitted that she is capable of working a full-time job at minimum wage and she testified that she had enrolled in classes to get her GED.

Pamela also testified that she believed Tyler's best interests required that she maintain sole custody. She indicated that she has always been able to provide for Tyler and believed that Tyler should not be left alone at home. Pamela further testified that she felt as though she had no option but to sign the mediation agreement because she and Michael had spent 4 or 5 hours with the mediator and had gotten nowhere. Pamela claimed that there was nothing in the mediation agreement which she had requested.

Testimony at trial also revealed that Michael and Pamela have difficulty communicating. Pamela claimed that Michael should allow her to take Tyler during Michael's parenting time while he is at work and Tyler is at home alone. Pamela testified that she would often contact Michael to determine whether he would allow her to have this extra time with Tyler. Michael characterizes Pamela's contact with him much differently. He testified that Pamela constantly contacts him during his parenting time with Tyler. In fact, Michael testified that during one week Pamela sent him 131 text messages. Michael obtained a harassment protection order against Pamela regarding her telephone contact.

On July 14, 2014, the district court entered an order awarding the parties joint legal custody of Tyler and Pamela with sole physical custody. In reaching this decision, the court observed that the parties' animosity has had an adverse effect on Tyler. However, the court did not find either parent to be unfit. The court acknowledged that Pamela's numerous moves occurred during a transitional period in her life, but there was no evidence that these moves affected Tyler negatively. Additionally, the court found that Pamela's current living situation permitted her to devote a substantial amount of time to Tyler's needs. The court also explained that the transportation arrangement Michael utilized during his parenting time was not in Tyler's best interests. The court further concluded that Michael's circumstances did not place him in a position to provide the care and support necessary for Tyler.

The court awarded Michael parenting time according to a parenting plan the court developed. The court's parenting plan provided Michael with regular parenting time every other weekend and telephone contact with Tyler each Wednesday for 15 minutes. During the summer, Michael was awarded 7 consecutive days of parenting time during a period in which he was not working. The court also adopted the *Wilson* holiday visitation schedule. Finally, Michael was ordered to pay monthly child support along with a cash medical support payment to Pamela. Michael appeals from this order.

## ASSIGNMENTS OF ERROR

Michael argues that the district court abused its discretion when it determined that primary physical custody of Tyler should remain with Pamela. Michael also contends that the district court erred by ordering a parenting plan that provided him with less parenting time than prior to his filing of the complaint to modify.

STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason and evidence. *Id.*

ANALYSIS

*Physical Custody of Tyler.*

Michael contends that the district court erred when it did not modify the previous order to award him primary physical custody or joint physical custody of Tyler. He asserts that he has maintained a stable living situation and full-time employment throughout the ongoing paternity action. He also notes that Pamela's living situation has been extremely unstable until recently and she has not maintained full-time employment for any extended period of time. Finally, Michael asserts that the fact the parties had operated under a temporary joint custody arrangement prior to trial should have required the district court to award him joint physical custody, at the very least.

As an initial matter, Michael notes that the district court's order did not specify whether it found a material change in circumstances. We agree with Michael's observation. Although the court noted that Michael had alleged that Pamela's numerous moves and living with various people constituted a material change in circumstances, the resulting order does not state whether Michael met his burden to establish a material change in circumstances. Nonetheless, the district court concluded that Tyler's best interests required that Pamela retain sole physical custody.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Watkins v. Watkins*, *supra*; *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). The party seeking modification of child custody bears the burden of showing a material change in circumstances. *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000); *Bird v. Bird*, 22 Neb. App. 334, 853 N.W.2d 16 (2014).

According to Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2012), the best interests of the child require a parenting arrangement which provides for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress. *Donscheski v. Donscheski*, 17 Neb. App. 807, 771 N.W.2d 213 (2009). Section 43-2923(6) states:

In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family member . . . and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

In addition to the above factors, the Nebraska Supreme Court has held that in determining a child's best interests, courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension regardless of chronological age, and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child. See *Davidson v. Davidson*, 254 Neb. 357, 576 N.W.2d 779 (1998).

Having conducted a de novo review of the record, we conclude that Michael failed to prove that a material change in circumstances had occurred such that it would be in Tyler's best interests to change custody. Michael focuses on Pamela's housing instability and lack of continuous employment as support for his claim for custody. There is no dispute that Pamela had difficulty maintaining stable housing for approximately 2 years. However, the evidence in the record does not establish that Pamela's family was ever without shelter or that the constant moves had any adverse effect on Tyler. In fact, Pamela testified that she made sure that her both of her sons were able to remain at their same schools. Pamela has now acquired permanent housing for her family and does not plan on moving from this residence. Further, the record shows that Pamela has been able to provide for Tyler and her older son even though she does not maintain full-time employment. Pamela also testified that she is the parent who attends all of Tyler's individual education plan meetings at school as well as his medical appointments.

Additionally, there is evidence in the record which demonstrates that placing Tyler's physical custody with Michael would not be in Tyler's best interests. Because he does not have a driver's license, Michael is reliant upon others to provide for Tyler's transportation. This includes having Tyler obtain rides from a cab company. Additionally, Michael's work schedule requires Tyler to remain at home alone during extended periods of time. We agree with the district court's conclusion that this is not the ideal situation for Tyler at this stage in his life.

There is conflicting evidence in the record as to which living situation would be in Tyler's best interests. When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006); *Keig v. Keig*, 20 Neb. App. 362, 826 N.W.2d 879 (2012). Giving due consideration to the fact

that the trial court heard and observed the witnesses in this case, we conclude the court did not abuse its discretion when it concluded that Tyler's best interests required that Pamela retain sole physical custody.

Michael argues alternatively that the court should have ordered joint physical custody and points to the fact that the parties had been operating on a shared custody basis since the temporary order and mediation agreement. The district court referred to the mediation agreement as "an attempt at mediation" and found that (1) it is not a completed Parenting Plan pursuant to Neb. Rev. Stat. § 43-2929 and (2) it is "folly" for the parties to share physical custody of Tyler based upon the evidence heard by the court. Based upon our de novo review of the record, we agree with the district court's findings. Further, we conclude that the record does not demonstrate that the parties are able to communicate to an extent where joint custody would be appropriate. See *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009) (communication is an essential requirement for joint custody to be successful). We cannot envision a joint custody arrangement successfully operating in a situation where one parent has recently obtained a harassment protection order against the other. The district court did not abuse its discretion when it declined to order joint custody.

*Court's Parenting Plan.*

Michael also argues that the district court erred when it adopted a parenting plan that awarded him less parenting time than he received under the prior orders. As noted above, in the original paternity order Michael received parenting time every other weekend, every Monday and Thursday evening, and holiday visitation according to *Wilson v. Wilson*. This order was later modified in 2012 with Michael being granted summer parenting time of 14 consecutive days each June and July. After the recent trial, the court adopted a parenting plan which awarded Michael parenting time every other weekend, a 15-minute weekly phone call with Tyler on Wednesday evenings, 7 days of summer parenting time, and the *Wilson* holiday visitation. Michael contends that the court's parenting plan was contrary to the evidence presented at trial.

Having thoroughly reviewed the record, we find merit to Michael's contentions. Pamela did not present any evidence at trial to establish that the parenting time arrangement in the original paternity order and the 2012 modification as to summer parenting time needed to be changed. Rather, Pamela's evidence at trial focused on her fitness to have primary physical custody of Tyler and her unwillingness to continue the shared custody arrangement from the previous temporary order and the mediation agreement. Pamela testified that Tyler's best interests required that she have primary physical custody, but she did not seek to reduce Michael's parenting time. Pamela's only complaint was that she did not have the right to first refusal during Michael's parenting time when Tyler was at home alone.

Because there was no evidence to support the modification of Michael's parenting time, we conclude the district court's parenting plan constituted an abuse of discretion. Therefore, we reverse the district court's parenting plan and remand the cause with directions to reinstate Michael's parenting time as ordered in the original paternity order and the 2012 modification relating to summer parenting time.

CONCLUSION

The district court did not abuse its discretion when it determined that Pamela should retain primary physical custody of Tyler and denied Michael's application for modification of custody. We affirm that portion of the order. However, we find that the court abused its discretion when it adopted a parenting plan that modified Michael's parenting time without any evidence to support the modification. We reverse that portion of the order and remand the cause with directions to reinstate Michael's parenting time as ordered in the original paternity order and the 2012 modification.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.