IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STUTZMAN V. STUTZMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMIE L. STUTZMAN, APPELLANT,

V.

CODY S. STUTZMAN, APPELLEE.

Filed December 6, 2016.    No. A-16-544.

Appeal from the District Court for Brown County: KARIN L. NOAKES, Judge. Affirmed.

Loralea L. Frank, Preston J. Peterson, and Nathan P. Husak, Senior Certified Law Student, of Bruner Frank, L.L.C., for appellant.

Michael S. Borders, of Borders Law Office, for appellee.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

INBODY, Judge.

## INTRODUCTION

Jamie L. Stutzman appeals from an order of the district court for Brown County modifying the parties' divorce decree. Jamie asserts the district court abused its discretion in overruling her objection to an in-camera interview of the parties' two children and in granting Cody S. Stutzman's request for joint physical custody of the children.

## STATEMENT OF FACTS

Jamie and Cody are the parents of two children: Maverick, born in 2003; and Dakota, born in 2005. On May 11, 2012, the Brown County District Court entered an amended decree of dissolution of marriage, awarding Jamie physical custody of the children and both parties joint legal custody of the children. The district court ordered Cody to pay $634 per month in child support to Jamie. Cody's parenting time takes place: (1) every other weekend; (2) every fourth

week of every month, except during summer vacation when the parents alternate weeks; and (3) alternated holidays.

On April 10, 2015, Jamie filed a complaint for modification of child support, alleging Cody's income increased to warrant a change in his child support payment. Cody filed an answer, along with a complaint for modification of custody seeking physical custody of the children, claiming there was a material change of circumstances. Specifically, Cody alleged the parties' children requested equal parenting time between both parents, that Jamie allowed the children to have contact with a convicted felon, and that Jamie allowed Maverick to play contact sports despite Maverick's doctor's warning against such contact sports. Cody later filed a motion for an in-camera interview. Jamie objected to the motion for an in-camera interview, which was overruled.

The district court held a trial on March 30, 2016. Cody testified regarding his work schedule, including out-of-state travel; his ability to care for the children; and his involvement with the children. Cody did not object to a modification of his child support obligation. Cody also testified the children told him they would like to spend more time with him. Cody stated his concern that the current custodial schedule caused it so he would sometimes not see the children for more than 10 days at a time. Cody testified that if he was awarded week on/week off parenting time, he would not travel during the weeks he had the children. Cody stated the only support he had to assist in caring for the children were friends, but would call Jamie if he needed assistance.

Jamie objected to the week on/week off parenting schedule, claiming it was not in the children's best interests. Jamie argued a joint physical custody arrangement was not stable for the children because: the children do not remember items when they travel between homes; Maverick's grades have fallen because of the rotation; the children do not practice adequate hygiene when they stay with Cody; and the children's behavior would be influenced because Cody parents differently. Jamie testified the children are adjusted to the current parenting time arrangement and have a routine. Additionally, Jamie testified the children have not told her they would like to spend more time with Cody. Jamie also stated her close family and friends are able to assist in caring for the children.

The court heard testimony regarding the parties' relationship. Cody stated Jamie did a good job co-parenting with him and kept him apprised of the children's appointments, activities, and events. Cody also testified the parties do not communicate well and that he does not always respond right away to Jamie's text messages because of work responsibilities. Jamie testified the parties have not been able to co-parent, discuss the children's needs, or make joint parenting decisions. Additionally, Jamie stated the parties cannot talk in person, sometimes talk on the telephone, and that Cody is non-responsive to her text messages.

Further, testimony at trial indicated that Maverick had a bone spur as a result of a shelf falling on him at a friend's home during Cody's parental time. Jamie testified she did not want Maverick to be at the friend's home where the incident occurred. Cody testified that because of the bone spur pushing against Maverick's spinal column, he was not supposed to be playing contact sports and that Jamie signed up Maverick for soccer and basketball, which Cody believed to be contact sports. Jamie testified the doctor did not allow Maverick to play contact sports, but was allowed to play basketball and soccer.

Moreover, Cody testified Jamie was acquainted with a convicted drug offender, Scott Frees, who was at Jamie's home a few times and went with her and the children on a trip to Omaha. Jamie admitted she was once in a relationship with Frees for approximately three months and that Frees was only around the children on two occasions. Jamie stated she did not believe Frees was dangerous and that she did not know anything about his past until her counsel informed her, which caused her to immediately break off the relationship.

Jamie testified a major concern for sharing joint physical custody was that Cody did not have a reliable vehicle. Specifically, Jamie was concerned the children would not be able to arrive at their activities and events as a result of Cody not having a reliable car. Cody acknowledged he had vehicle problems and testified he was working on obtaining a vehicle.

Jamie again reiterated her objection to an in-camera interview of the children. Jamie opined the children were not of a sufficient age to make a mature decision because they still played with toys and believed in fictional characters like Santa Claus, the Easter Bunny, and the tooth fairy.

At trial, the trial court did an in-camera interview with Maverick, but not with Dakota. Maverick was 12 years old and in the 6th grade at the time of trial. Maverick earned A, B, and C grades at school. Generally, the interview with Maverick indicated: he did well in school, but failed to turn in his homework; both parents helped him with schoolwork; he was not allowed to play football or wrestle, but enjoyed golf and shooting; he enjoyed spending time with both parents and still has a good relationship with both parents; he had responsibilities and chores with both parents; both parents assist in making breakfast, finishing school work, etc.; his parents live near each other and he could see both parents despite the custody arrangement; and that he and Dakota would like to spend every other week with Cody, but he has a hard time telling Jamie because it would make her sad. Maverick testified he was the one who brought up spending more time with Cody.

At the trial's conclusion, the district court found that a material change of circumstances existed since the divorce decree and granted the parties joint physical custody of the children. Jamie has timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, Jamie's assignments of error, consolidated and restated, are that the trial court abused its discretion in (1) overruling her objection to the in-camera interview of the children and (2) granting Cody joint physical custody of the children.

## STANDARD OF REVIEW

A trial court's ruling on a motion to conduct an in-camera interview of a child in custody proceedings is reviewed for an abuse of discretion. *Donscheski v. Donscheski,* 17 Neb. App. 807, 771 N.W.2d 213 (2009).

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Jakai C. v. Tiffany M.,* 292 Neb. 68, 871 N.W.2d 230 (2015). See, also, *Schrag v. Spear,* 290 Neb. 98, 858 N.W.2d 865 (2015).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence

is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Freeman v. Groskopf,* 286 Neb. 713, 838 N.W.2d 300 (2013).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear, supra.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

ANALYSIS

IN-CAMERA INTERVIEW

Jamie argues the trial court abused its discretion when it overruled her objection to Cody's motion for an in-camera interview because the children did not have the maturity or intelligence necessary to provide an opinion and the interviews were not sufficiently probative or in the children's best interest.

"In determining custody and parenting arrangements, the court shall consider the best interests of the . . . child, which shall include . . . consideration of the . . . desires and wishes of the . . . child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning[.]" Neb. Rev. Stat. 43-2923(6)(b) (Cum. Supp. 2014). In applying this provision, the Nebraska Supreme Court has determined that although the child's wishes are not controlling in the custody determination, if a child is of sufficient age and expressed an intelligent preference, the child's preference is entitled to consideration. *Vogel v. Vogel,* 262 Neb. 1030, 637 N.W.2d 611 (2002). Further, the Nebraska Supreme Court has also observed that in cases where significant consideration was given to the child's preference, the child was commonly over 10 years of age. *Id.*

Similar to this instance, we have previously determined whether it is appropriate for the trial court to consider the testimony of a 12-year-old child. In *Donscheski v. Donscheski, supra,* the child at interest was 12 years old, about to begin the 7th grade, and received A and B grades. We determined the child at issue in *Donscheski v. Donscheski, supra,* was "of sufficient age and intelligence to be heard, and his preference, whatever that may be, as well as his reasoning should have been heard and considered." *Id.* Further, we reasoned that "[a]lthough we are not anxious to see children dragged into custody battles, in some cases, it may be necessary, and not inappropriate, particularly when a child is of [a certain] age and apparent intelligence." *Id.*

At the time of trial, Maverick was 12 years old and in the 6th grade, earning A, B, and C grades. It is clear he understood he had C grades because he failed to complete or turn in homework. It is also evident that Maverick understood his own limitations and inability to participate in contact sports as a result of his bone spurs, but was able to find suitable enjoyment in other activities. Additionally, Maverick acknowledged he had a good relationship with both parents and desired to be close to them. Maverick stated he was the one who suggested that he spend more time with Cody, but had difficulty in telling Jamie because he did not want to make her upset, as any child would find difficult in such conversation. Maverick was of sufficient age

and intelligence to be heard, and his preference and reasoning were appropriately heard and considered.

Therefore, we determine the trial court did not abuse its discretion in overruling Jamie's objection to the in-camera interview of Maverick. However, as the trial court did not interview Dakota, this issue is not relevant and we will not consider it.

AWARD OF JOINT PHYSICAL CUSTODY

Jamie argues the trial court abused its discretion when it granted Cody joint physical custody of the children because there was no material change in circumstance to show that she was unfit or that the best interests of the children required such action.

A child custody modification case requires the party seeking modification must: (1) show that a material change in circumstances has occurred after the entry of the previous custody order and affecting the best interests of the child; and (2) prove that changing the child's custody is in the child's best interests. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A material change in circumstances means the occurrence of something which, had it been known at the time of the initial decree, would have persuaded the court to decree differently. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). The party seeking modification of child custody bears the burden of showing as an initial matter that there has been a change in circumstances. *Id.*

The child's best interests requires a parenting arrangement and plan which provides for a child's safety, emotional growth, health, stability, physical care, and regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2014). Moreover, § 43-2923 sets forth a non-exhaustive factor list to consider in determining the child's best interests in regard to custody. Such factors include: the child's relationship with each parent; the child's desires; the child's general health and well-being; and credible evidence of abuse inflicted on the child by any family or household member. In addition to the "best interests" factors provided in § 43-2923, a court making a child custody determination may consider: the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between the child and parents; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear,* 290 Neb. 98, 858 N.W.2d 865 (2015).

The trial court found there had been a material change of circumstances since the divorce decree "was entered or last modified." Based upon our de novo review, we find no abuse of discretion in the trial court's finding of a material change in circumstances that justified granting Cody joint physical custody of the children and that such a modification was in the children's best interests.

Cody and Jamie presented conflicting testimony regarding whether a custody change would be in the children's best interest. Jamie was generally opposed to the change in custody because she wanted the children to have stability and a routine. However, Cody presented testimony that he would be able to provide the children stability, that he was active with the

children, and that he would not be out of town while exercising his parenting time with the children. Moreover, the current parenting schedule already indicates the parents alternate weeks during the children's summer vacation, which would continue during the school year under the new custodial arrangement.

There was also conflicting testimony by Cody and Jamie regarding whether the children wanted to spend more time with Cody. However, the trial court was able to hear testimony from Maverick that he and Dakota desired to spend more time with Cody, but he had trouble telling Jamie because he did not want to make her sad. As discussed above, Maverick's preference was entitled to consideration as he was able to express a clear and intelligent desire to spend more time with Cody.

In addition to testimony regarding the children's preference, the trial court was also able to hear testimony regarding the children's relationship with each parent, the children's general health and well-being, the emotional relationship between the children and parents, and the parents' capacity to provide physical care and satisfy the educational needs of the children. The testimony at trial shows that the children have close and loving relationships with both parents and that they get along well with both parents. The testimony also provided that both parents are actively involved with the children, that they assist the children with their homework and assignments, and that the children have responsibilities and routines with both parents. It is also clear that both parents have an understanding as to Maverick's limitations as a result of the bone spur.

Moreover, the trial court heard testimony regarding Jamie's three-month relationship with Frees, a convicted felon. Jamie admitted to the relationship, but indicated she did not have knowledge of Frees' conviction, or that he was dangerous. Jamie also stated that Frees was only around the children on two occasions.

Upon our de novo review, we conclude the trial court did not abuse its discretion in finding a material change in circumstances existed and that the children's best interests would be served through a custody modification.

## CONCLUSION

We find the trial court did not abuse its discretion in overruling Jamie's objection to the children's in-camera interview. Further, upon our de novo review, we find the trial court did not abuse its discretion in finding a material change in circumstances existed and that the children's best interests would be served through a custody modification.

AFFIRMED.