IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STEVENS V. KIMMERLING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MICHAEL P. STEVENS, APPELLEE,

V.

KATHERINE R. KIMMERLING, APPELLANT.

Filed October 16, 2018.    No. A-17-1179.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

James H. Hoppe for appellant.

Adam R. Little, of Ballew Hazen, P.C., L.L.O., for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Katherine R. Kimmerling appeals the order of modification entered by the district court for Lancaster County that awarded the parties joint physical custody of their two children with a week on, week off rotation. Finding no merit to Kimmerling's arguments, we affirm.

## II. BACKGROUND

Michael P. Stevens and Kimmerling are the biological parents of two children: Abbey, born in 2008, and Jay, born in 2010. Stevens and Kimmerling were never married, and in 2011, a decree of paternity was entered naming Stevens as the children's biological father. The parties agreed to a parenting plan that awarded them joint legal custody of the children, with primary physical custody to Kimmerling and parenting time with Stevens every other weekend.

- 1 -

Additionally, each parent was allotted two uninterrupted weeks of parenting time during the summer. The court also ordered Stevens to pay $475 per month in child support.

At the time the parenting plan was entered into, Stevens was a graduate assistant and Ph.D. student in Lincoln, Nebraska, and Kimmerling was living in Omaha, Nebraska. Stevens' limited income and job restrictions, including mandatory office hours and research hours, made it difficult for him to travel back and forth from Lincoln to Omaha to see the children.

Subsequently, Stevens graduated from the university, and accepted a research position at the school. Stevens' job with the university is salaried and provides him with flexible work hours, allowing Stevens to spend more time with his children. Stevens' higher salary also allows him to pay additional child support, beyond the amount in the paternity decree. Additionally, Stevens has since married and his wife has two biological children. The couple has a five-bedroom house in Lincoln, where they live with Stevens' two stepchildren.

Kimmerling remained in Omaha with Abbey and Jay until the spring of 2016 at which time she married and moved to Lincoln. Kimmerling, who has a Master's Degree in community counseling, lives just 1.7 miles from Stevens' home. Kimmerling's husband has two children who reside with them at their home in Lincoln.

Stevens and Kimmerling have generally had a cordial relationship; however, the two have had some difficulties communicating. Communication issues exist regarding the children's taekwondo classes and which school the children would attend.

In light of the difficulty in communicating effectively with Kimmerling, as well as his improved living conditions, Stevens filed a complaint for modification seeking to modify the parenting plan.

At the modification hearing, Stevens stated that his desire was to have more time with Abbey and Jay in order to be a dad to them, help them with homework, and help them grow up in general. Stevens testified that his improved financial and living situation, as well as the close proximity between Stevens and Kimmerling, amounted to a material change of circumstances and that the parenting plan should be modified to reflect those changes. Stevens argued that the court should accept his proposed "2/5/2/2/5" custody split, which would become a week on, week off arrangement once the children's school year ended.

Kimmerling testified that Stevens was a good father and had the children's best interest at heart, and that he deserved more parenting time. Kimmerling objected, however, to Stevens' proposed parenting plan, arguing that it would create too many transitions between homes for the children. Kimmerling proposed a modified parenting plan calling for a "10/4 split," which would extend Stevens' weekend parenting time to 4 days instead of 2 days and limit the number of transitions the children would have to one a week.

After hearing the testimony of the witnesses and viewing the evidence presented, the district court entered an order adopting Stevens' proposed week on, week off parenting plan. The district court specifically found that there had been a material change of circumstances, and modification of the original parenting plan was in the best interest of the children. Kimmerling timely appealed.

## III. ASSIGNMENTS OF ERROR

Kimmerling assigns, restated, that the district court erred when it found that there had been a material change in circumstances effecting the best interests of the minor children, and thereby ordering the parties to share joint physical and legal custody on a week on, week off schedule.

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.* When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of facts rather than another. *Keig v. Keig*, 20 Neb. App. 362, 826 N.W.2d 879 (2012).

## V. ANALYSIS

### 1. CHANGE OF CIRCUMSTANCES

Kimmerling claims that the court did not specify the material change in circumstance which led to its decision. We disagree. In its modification order, the court specifically identified four areas of change which resulted in a material change in circumstances warranting modification: proximity of the parties, income of the parties, marital status of the parties, and the ages of the children.

The paternity order was entered 7 years prior to the modification when the children were approximately 1 year old and 2 years old. At that time, the parties agreed to a parenting plan. They agreed that both parties were fit and proper persons to be awarded the care, custody, and control of the minor children. They further agreed that it was in the best interests of the minor children that the parties be awarded joint legal custody. As to physical custody, the parties agreed that Kimmerling would have primary custody and that Stevens would have parenting time every other weekend from Friday at 5:30 p.m. until Sunday at 5:30 p.m. The parties would meet halfway on the weekends to exchange the children.

The agreed upon parenting plan was entered into at a time when Stevens was living in Lincoln in a two-bedroom apartment and Kimmerling was living in Omaha. Stevens was a full time student with mandatory office hours as a graduate assistant and had little income. He testified that his schedule, combined with his financial situation, prevented him from traveling freely to Omaha. The circumstances have changed significantly in the last 7 years, as more fully discussed below. Therefore, the court did not abuse its discretion in determining that a material change in circumstance had occurred.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the

child require such action. *Schrag v. Spear, supra*. A material change in circumstances means the occurrence of something, which, had it been known by the court at the time of the initial decree, would have persuaded the court to decree differently. *Id*. The best interests of the children are the primary and paramount considerations in determining and modifying parenting time. *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016).

The party seeking modification of child custody bears the burden of proving a change in circumstances. *Schrag v. Spear, supra*. The party seeking modification must show a material change in circumstances, occurring after the entry of the previous order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005).

The district court was correct in finding that there had been a material change of circumstances. It pointed to four areas of change which had occurred since the initial parenting plan was entered: the proximity of the parties, the income of the parties, the marital status of the parties, and the ages of the children. We will discuss each change in turn.

### (a) Proximity of Parties

When the parties entered into the initial parenting plan, Stevens lived in Lincoln, while Kimmerling lived in Omaha, with a distance of nearly 70 miles between the two. Presently, the parties live only 1.7 miles apart, as Kimmerling recently moved to Lincoln with Abbey and Jay. The closer distance allows more accessibility to the children, a condition which did not exist at the time of the original parenting plan. A significant move may be a change of circumstances warranting modification, depending upon other evidence. See *Kenner v. Battershaw*, 24 Neb. App. 58, 879 N.W.2d 409 (2016). And we have upheld a district's court's modification of a parenting plan based upon a change in the distance between the parent's residences. See, *id*.; *Bohnet v. Bohnet*, 22 Neb. App. 846, 862 N.W.2d 99 (2015).

With Stevens and Kimmerling living so close, the parents can divide parenting time without disrupting the children's school schedule or extracurricular activities. Shortening the distance between Stevens and Kimmerling, from 70 miles to just 1.7 miles, coupled with other evidence, meets the standard for a material change of circumstances.

### (b) Income of Parties

Stevens' financial resources have significantly increased. At the time the initial parenting plan was entered into, Stevens was a graduate assistant and a Ph.D. student on a very limited income. Presently, Stevens is fully employed at the university and has a "pretty good income." Stevens' financial limitations at the time the initial parenting plan was entered into prevented him from seeing Abbey and Jay as much as he wanted to, and prevented him from having a comfortable living arrangement for his children in Lincoln. Stevens' increased income has allowed him to purchase a home with his wife that has plenty of room for the children, as well as room for Stevens' stepchildren.

### (c) Marital Status of Parties

At the time the initial parenting plan went into effect, both Stevens and Kimmerling were single and living alone. At the time of trial, both Stevens and Kimmerling were married. The home life, regardless of whether it is at Stevens' home or Kimmerling's, is dramatically different than what it was at the time the initial parenting plan took effect. Both Stevens and Kimmerling are now married and have stepchildren living in the home that provides an additional family dynamic that did not previously exist. These stepchildren are of similar ages as Abbey and Jay, allowing both children to grow up with stepsiblings at each home.

### (d) Ages of Children

Finally, the children are no longer toddlers. While the children's advanced age alone may not be enough upon which to base a modification, when coupled with the other changes the district court identified, it is a factor to consider. At the time the initial parenting plan was entered into, Abbey was 2 years old and Jay was nearly 1 year old. At the time of the modification hearing, Abbey was 8 years old and Jay was 7 years old. They are very active and involved in multiple extracurricular activities, such as taekwondo and swimming. Because the parties live so close to one another, they can each be involved in the children's activities, as each parent can attend practices and meets.

The advanced age of the children, when coupled with the other material changes that the district court noted, adequately supports the district court's determination that there was a material change of circumstances.

The district court did not abuse its discretion in determining that material changes of circumstances existed. Moreover, each of the material changes of circumstances affect the best interest of the children as discussed below.

### 2. BEST INTERESTS OF CHILDREN

Before custody of children may be modified based upon a material change in circumstances, it must be shown that the modification of custody is in the best interests of the children. *Schrag v. Spear, supra*. In determining custody and parenting arrangements, the court must consider the best interests of the minor child which includes (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of the minor child; (3) the general health, welfare, and social behavior of the minor child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect. Neb. Rev. Stat. § 43-2923(6) (Reissue 2016).

In addition to the statutory best interest factors, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; the respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parents' character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear, supra*. The best interests of the child require a parenting arrangement which provides for a child's safety, emotional growth, health, stability, and

physical care and regular and continuous school attendance and progress. *Donscheski v. Donscheski*, 17 Neb. App. 807, 771 N.W.2d 213 (2009).

Here, the district court found that modifying the parenting plan, allowing a week on, week off of parenting time between Stevens and Kimmerling, was in the best interests of Abbey and Jay. Although the district court did not articulate its reasoning, a review of the record reveals no abuse of discretion.

The record indicates that both Stevens and Kimmerling have provided loving homes for Abbey and Jay. Further, each parent agrees that the other has the children's best interests at heart. Although there have been minor communication difficulties between Stevens and Kimmerling regarding the children's taekwondo classes and school, Stevens and Kimmerling generally get along cordially. In fact, Kimmerling agreed that Stevens deserved additional parenting time, beyond the every other weekend he received under the initial parenting plan. The main disagreement between the parties is whether Stevens' proposed week on, week off schedule is better than Kimmerling's proposed 10/4 schedule.

When examining the statutory factors of § 43-2923, both Stevens and Kimmerling are indistinguishable. Both seemingly have a good relationship with Abbey and Jay; there is no evidence in the record that Abbey and Jay prefer one parent over the other; and there is no evidence of abuse of any kind. Moreover, it appears that both parents adequately provide for the general health, welfare, and social behavior of the children. Each home has stepsiblings for Abbey and Jay to interact with, each parent provides meals and support to the children, and each parent is as involved as possible in the children's lives.

Further, when examining the additional factors set out in *Schrag v. Spear, supra*, Stevens and Kimmerling are again indistinguishable. Each parent has married and can provide a stable home for Abbey and Jay. Nothing in the record indicates any moral issues regarding either parents' ability to raise the children. The only point of contention over the proposed week on, week off plan comes from Kimmerling's assertion that it would cause too many transitions for the children. However, under the week on, week off plan, the children would have one transition a week, on Friday evenings at 6 p.m. This is the same time period that Abbey and Jay had been reporting to Stevens' home under the original parenting plan; therefore, the transition will already be familiar for the children. Additionally, the children will have the weekend to adjust to the new home before attending school on Monday morning.

Finally, even under Kimmerling's proposed plan, the children would have a transition every 10 days, but this transition would likely occur during the week, thus disrupting the children's school routine. Under either proposed routine the children would face a transition to the other parent's home once a week. With each parent appearing to be adequate and capable caregivers, and little to separate the homes of the respective parents, it cannot be said that the district court abused its discretion in determining that Stevens' proposed week on, week off plan was in the children's best interests.

## VI. CONCLUSION

Upon our de novo review of the record, we find no abuse of discretion in the district court's order finding a material change of circumstance that affects the children's best interests. We therefore affirm the court's order adopting Stevens' proposed parenting plan.

AFFIRMED.