IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


BAY V. BAY


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


GIDGET BAY, NOW KNOWN AS GIDGET WOERNER, APPELLEE,

V.

NICOLA G. BAY, APPELLANT.


Filed April 5, 2022.    No. A-21-458.


Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Matthew Saathoff and Donald E. Loudner III, of The Saathoff Law Group, P.C., L.L.O., for appellant.

Steven M. Delaney and Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellee.


PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Nicola G. Bay appeals the order of the district court for Sarpy County which denied his amended complaint to modify the decree of dissolution and granted Gidget Bay's counterclaim. We affirm.

## II. BACKGROUND

Nicola and Gidget, now known as Gidget Woerner, were married in 2006 and have two minor children, a daughter and a son. An amended decree of dissolution was entered in September 2018, and the parties were awarded joint physical custody of the children with sole legal custody

- 1 -

to Gidget. The amended decree set Nicola's parenting time as Sunday morning through Wednesday afternoon to align with his work schedule.

Nicola filed a complaint to modify the amended decree in October 2019 and later filed an amended complaint to modify in August 2020. In the amended complaint, Nicola requested joint legal and physical custody of the minor children with "50/50" parenting time. Nicola alleged a material change in circumstances including a breakdown of the relationship between him and Gidget, his work schedule changed to a "4-2 schedule" with inconsistent days off, the minor daughter was detained or arrested two times including a felony charge, Gidget limits his access to the children, and Gidget's actions negatively impact his parenting time. Gidget filed an answer and "counter-complaint" for modification, requesting sole physical custody, modified parenting time, and a new child support calculation. Gidget alleged that Nicola failed to adjust his work schedule to coincide with his trial testimony and the amended decree parenting time.

Prior to trial, Gidget filed a request for the district court to conduct an in camera interview with the parties' minor daughter. Nicola filed an objection to the in camera interview, stating that the motion was fatally flawed in that it failed to comply with requirements set forth by the Nebraska Supreme Court governing the determination of whether a child can testify in camera. He also asserted that it was not in their daughter's best interest to testify. After hearing the parties' arguments, the district court stated that it would further address the matter at the start of the trial. Prior to the start of trial, Nicola renewed his objection, which the court overruled. Prior to questioning the child, the court established that she was 13 years old, knew the difference between the truth and a lie, and that there are consequences to telling a lie. The child promised to tell the truth after which the attorneys proceeded to question her.

The following evidence was adduced at trial. Nicola is employed as a police officer with the City of Omaha. At the time of the initial trial, he testified that he worked a "4-3" set schedule. This meant that Nicola would work the same 4 days each week and had the same 3 days off each week. During the dissolution proceedings, he informed the court that he intended to keep this schedule. However, following the April 2018 dissolution trial, but prior to the decree being entered, Nicola filled out an assignment request form in which he requested a position that did not provide a 4-3 schedule. He was awarded that position.

At the time of the modification hearing, Nicola was working in a different unit, from 3:30 p.m. until midnight, a position for which he applied. He works 4 days and then has 2 days off, and his days off are not consistent each week. According to Nicola, the 4-3 set schedule he was working at the time of the dissolution hearing was removed as an option in early 2019.

A sergeant with the Omaha Police Department testified regarding the shifts available to Nicola. She confirmed that Nicola filled out four assignment request forms from February 2018 to August 2019. On each of those forms, Nicola requested the "C" shift, which was an evening shift from approximately 4 p.m. to midnight. None of the positions he applied for had a Monday through Friday schedule.

After the divorce, prior to the complaint to modify being filed, the parties agreed temporarily to allow Nicola parenting time on his rotating 2 days off. However, during the 6 months preceding trial, Nicola exercised his parenting time with the children from Sunday through Wednesday, in accordance with the parenting plan. This parenting time does not always

correspond to his days off and the children are sometimes left at home alone while he works from approximately 3 p.m. to midnight.

Gidget testified that she initially tried to work with Nicola on his work schedule to foster an ability to "come together for the kids." Gidget eventually got tired of waiting for Nicola to arrange his schedule. She testified that she never agreed to permanently change the parenting time to coincide with Nicola's rotating days off. When she attempted to tell Nicola that she no longer wanted to accommodate his work schedule, Nicola would say that they would stick to his schedule. Gidget felt she did not have the option of telling Nicola no.

Gidget testified that Nicola was not consistently exercising his Sunday through Wednesday parenting time. According to Nicola, when he exercised his parenting time Sunday through Wednesday, it went "really, really well" and the children were not voicing any concerns about being home alone. The parties' 13-year-old daughter supervised herself as well as her 10-year-old brother. Nicola called or texted the children about once an hour to ensure they were safe while he was at work. Gidget testified that she felt it was unsafe for the children to be home alone at night when at Nicola's and that they would wander over to Gidget's house every week. She informed Nicola of this action for the first time the week of trial, because she did not want the children to get in trouble.

Nicola testified that joint legal custody would benefit the children, because he would have the ability to schedule appointments for the children, as well as have a say in which counselor his daughter sees. When his daughter was hospitalized for a week, Nicola was not able to speak to a doctor the two or three times he called, although he was able to speak to his daughter once. Nicola has not tried to set up any dentist or counseling appointments for the children. He testified joint legal custody would be preferable because he wants to be a part of making decisions medically for the children and feels like it would lessen the amount of strife between him and Gidget.

Nicola stated that Gidget was not following the court ordered parenting plan, and the children spend significant unsupervised time while in her care and custody. He described this "unsupervised time" as time when Gidget "locks herself in her room" and the children are in the house. Nicola also testified that the children are not ready for pick up at the commencement of his parenting time at 9 on Sunday mornings. Gidget explained that the children are up or fighting to get up and that they are the ones stalling, not her. Nicola also complained that Gidget did not allow him to have the children on Mother's Day, which was his scheduled Sunday parenting time. He requested 50/50 parenting time on a week on/week off schedule because it would reduce the amount of stress and tension between him and Gidget.

The parties communicated through a program called "Our Family Wizard" and Nicola offered approximately 822 pages of communications as evidence. The exhibit contains communications regarding parenting time, payments for children's expenses, and discussions about the children's schooling.

During Gidget's parenting time, the daughter was cited by law enforcement after she and a friend started a construction forklift. She was charged with misdemeanor destruction of property and completed a diversion program. Gidget asked Nicola to contribute to the diversion costs, but Nicola refused because the incident occurred while the daughter was under Gidget's care. Prior to that incident, the daughter had one other contact with the police, but no citations or arrest resulted.

Regarding child support, Gidget testified that Nicola has not offered to make up any financial expenses based upon his exercising less than his allotted parenting time. In the "Our Family Wizard" program, there are examples of Nicola refusing to pay for Halloween costumes, clothing for the children, and a haircut.

Following trial, the district court issued an order denying Nicola's amended motion to modify and granting Gidget's counterclaim. It granted sole physical custody to Gidget, and modified the parenting schedule to follow the 4-2 work schedule of Nicola, allowing him parenting time on his rotating days off, for a maximum of 3 days per week. Child support was modified, using a sole physical custody calculation, and was retroactively applied to January 2020.

Nicola filed a motion for new trial, motion to alter or amend, and a motion to disqualify or for recusal of the trial judge. Nicola's motion to disqualify/recusal and the motion for new trial were denied in their entirety. The motion to alter or amend was denied, except for a modification requiring the child support to commence on March 1, 2021. Gidget filed a subsequent motion to alter or amend, and the district court granted it in part, reinstating the retroactive child support award beginning January 2020. Nicola appeals.

## III. ASSIGNMENTS OF ERROR

Nicola asserts, consolidated and restated, that the district court erred in (1) allowing the minor child to testify in camera; (2) relying upon the in camera testimony of the child when the district court found that she had mental health issues without any expert witness testimony; (3) denying Nicola's motion to alter or amend, or for new trial, or for recusal or disqualification; (4) granting Gidget sole physical custody of the minor children when Gidget failed to establish that such modification was in the best interests of the children; and (5) ordering Nicola to pay retroactive child support as the parties had joint physical custody until the entry of the order of modification.

## IV. STANDARD OF REVIEW

A trial court's ruling on a motion to conduct an in camera interview of a minor child in custody proceedings is reviewed for an abuse of discretion. See *Donscheski v. Donscheski*, 17 Neb. App. 807, 771 N.W.2d 213 (2009).

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019).

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020). A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010).

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, we will affirm the trial court's decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). Whether a child support order should be retroactive is also entrusted to the discretion of the trial court, and we will affirm its decision absent an abuse of discretion. *Id*.

## V. ANALYSIS

### 1. In Camera Testimony of Minor Child

Nicola's first three assignments relate to the allowance of in camera testimony of their daughter, age 13, and the district court's reliance upon that testimony. Nicola assigns that the district court erred in allowing their daughter to testify in camera because there was no showing that the presence of the parents during the testimony could be harmful to her and because there was no showing of her competency regarding her testimony. Finally, Nicola assigns that the district court erred in relying upon her in camera testimony, when the district court found that she had significant mental health issues without any expert witness testimony. We find no abuse of discretion in the district court allowing the child to testify in camera or in the district court's reliance upon her testimony.

### (a) Separate Hearing to Determine Risk of Harm to Child

Nicola assigns that the district court erred in allowing the minor child to testify in camera when there was no showing that the presence of the parents could be harmful to the child. A trial court's ruling on a motion to conduct an in camera interview of a minor child in custody proceedings is reviewed for an abuse of discretion. See *Donscheski v. Donscheski*, 17 Neb. App. 807, 771 N.W.2d 213 (2009).

Nicola argues that prior to their daughter's in camera testimony, the district court should have conducted a separate hearing to determine whether reasons exist for excluding the parents from her testimony. Nicola cites *In re Interest of Danielle D. et al.*, 257 Neb. 198, 595 N.W.2d 544 (1999), and argues that even though *In re Interest of Danielle D. et al.* is a juvenile court proceeding, the case requires a separate hearing to determine the child's competency and a showing that the presence of the parents during the testimony would be harmful. We find that *In re Interest of Danielle D. et al., supra*, is inapplicable to the present case.

In *In re Interest of Danielle D. et al.*, the Supreme Court stated:

> We now hold that when the State seeks to have a child testify in chambers *at an adjudication or termination hearing*, the State must give notice of such request to the parents or their counsel prior to *the adjudication or termination hearing*. Further, a juvenile court must conduct a hearing separate from *the adjudication or termination hearing* to determine whether reasons exist for excluding the parents from the child's testimony at *the adjudication or termination hearing*.

257 Neb. at 206, 595 N.W.2d at 550 (emphasis supplied). The court was clear and unambiguous in its language, the requirement for a separate hearing to determine whether reasons exist for excluding the parents from the child's testimony applies at an adjudication or termination hearing. Its statement was made in the context of protecting a parent's due process rights, taking into

- 5 -

consideration the interests of the parent vis-a-vis the State, given the rights at stake in an adjudication or termination proceeding. We decline to expand its holding to apply to modifications of dissolution decrees or custody questions between parents. We find no abuse of discretion in the district court allowing the in camera testimony of the minor child without holding a separate hearing.

### (b) Showing of Minor Child's Competency

Nicola assigns that the district erred in allowing their daughter to testify because there was no showing of her competency regarding her testimony. He argues there was no determination that she was capable of giving a competent or intelligent preference and her testimony was contradictory.

Every person is competent to be a witness except as otherwise provided in the Nebraska Evidence rules. Neb. Rev. Stat. § 27-601 (Reissue 2016). In ruling whether a child is a competent witness, the trial court must determine whether a child is sufficiently mature to receive correct impressions by his or her senses, whether the child can recollect and narrate intelligently, and whether the child can appreciate the moral duty to tell the truth. *In re Interest of M.L.S.*, 234 Neb. 570, 452 N.W.2d 39 (1990).

While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). The Supreme Court has observed that in cases where the minor child's preference was given significant consideration, the child was usually over 10 years of age. *Id*.

In the present case, the parties' daughter was 13 years old at the time of trial. She articulated reasoning that indicated she knew the difference between the truth and a lie, and she promised to tell the court the truth. We have reviewed her testimony and find that her preference was articulated intelligently and supported by logical reasoning. We find no abuse of discretion by the district court in allowing the in camera testimony of the parties' daughter.

### (c) Reliance Upon Minor Child's Testimony

Nicola assigns that the district court erred in relying upon their daughter's in camera testimony when the district court found that she had significant mental health issues without any expert witness testimony. This assignment of error overlaps with the previous assignment regarding competency. Nicola argues that the district court "seriously questioned" their daughter's competency, but then entered orders regarding best interests of the children based in part on her testimony. Brief for appellant at 25.

The district court's observation that the minor daughter has significant mental health issues does not equate to finding her incompetent to testify. Evidence was adduced that she had been hospitalized for depression and suicidal ideations and had been seen by various counselors. But as discussed above, initial questioning by the judge established that she was sufficiently mature to receive correct impressions by her senses, could recollect and narrate intelligently, and appreciated the moral duty to tell the truth. Therefore, we find no abuse of discretion in the district court's reliance upon the daughter's testimony.

To the extent Nicola argues that holding an in camera interview prevented him from responding to the testimony adduced, that issue was not assigned as error. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020). Because Nicola has not done so, we do not address this issue.

## 2. POSTTRIAL MOTIONS

Nicola assigns that the district court erred in denying Nicola's motion to alter or amend, or for new trial, or for recusal or disqualification because there was insufficient evidence, the court actively aided Gidget during trial, and had a personal bias against him. We address each argument in turn.

### (a) Motion to Alter or Amend

Nicola argues the motion to alter or amend should have been granted because the modification order awarded sole physical custody to Gidget while keeping Nicola's parenting time days essentially the same. An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. *AVG Partners I v. Genesis Health Clubs, supra*.

Under the initial amended decree, Nicola was awarded 3 days of parenting time per week, totaling approximately 156 days per year. Under the modification order, Nicola's parenting time follows his work schedule, 4 days working and then 2 days with the children. Nicola asserts that the modification order "removed the set schedule regarding [his] parenting time, but it kept [him] essentially the same by awarding him up to 3 days per week of parenting time which would follow his days off from work." Brief for appellant at 27. We disagree that the modification order allows him "essentially the same" amount of parenting time. It is only when Nicola has 3 days off during the same week that he is allowed 3 days of parenting time per week; otherwise, he receives only 2 days. For example, if Nicola is off work on a Sunday and Monday, he also will be off work the following Saturday, equating to 3 days off that week. Pursuant to the modification order, Nicola will receive approximately 121 days of parenting time a year, a reduction of approximately 35 days.

Moreover, "'joint physical custody'" contemplates more than just the number of parenting days. The Parenting Act defines it as "'mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time.'" *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 946, 932 N.W.2d 692, 703-04 (2019). So although the court initially ordered joint physical custody of the children when the parties were dividing the week with 4 consecutive days to Gidget and 3 consecutive days to Nicola, we find no abuse of discretion in awarding Gidget sole physical custody and reducing Nicola's parenting time to 2 consecutive days a week.

### (b) Motion for New Trial

Nicola sought a new trial on the basis of Neb. Rev. Stat. § 25-1142(1), (6), (7), and (8) (Reissue 2016). Specifically he claimed that there was an irregularity in the proceedings and the order of the court, the order was not supported by sufficient evidence and was contrary to law,

there was newly discovered evidence which is material and was not discovered and could not be discovered prior to the trial, and there was an error in law that occurred at trial. On appeal, Nicola asserts only that the court's order was not supported by the evidence, but he does not argue this assertion. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *AVG Partners I v. Genesis Health Clubs, supra*. Because Nicola has not argued this assigned error, we do not address it.

(c) Motion to Recuse or Disqualify Trial Court Judge

Nicola argues that the district court should have granted his motion to recuse or disqualify the trial court judge. A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). A judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *Id*. Such instances in which the judge's impartiality might reasonably be questioned specifically include where the judge has a personal bias or prejudice concerning a party or a party's lawyer. *Id*. A party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality. *Id*. Nicola has not satisfied this burden.

Nicola contends there were many instances in which the district court demonstrated bias and prejudice. He argues that the district court showed bias and abuse of discretion toward him in allowing the in camera testimony, in affording credibility to the minor child's testimony, in failing to make a competency determination, in not allowing him to present evidence to refute the testimony of the minor child's in camera testimony, in finding his demeanor was consistent with that of a bully as it pertained to Gidget, in disproportionally ruling in favor of Gidget, and in the fact that the district court had personal knowledge of how seniority affects the bidding process in the Omaha Police Department as her spouse has been a member of that department. Finally, during cross-examination of Gidget, the district court provided her the page number on which certain communication was found in the Our Family Wizard documentation.

Nicola's allegations of bias relate to the judge's courtroom administration and evidentiary and substantive rulings. But judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge. *Tilson v. Tilson, supra*. Nor can a judge's ordinary efforts at courtroom administration be a basis for bias or partiality. *Id.* Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.*

Our review of the record reveals nothing in the district court's rulings or other actions that indicates bias or prejudice necessitating recusal. Nothing in the record reflects the judge relied upon any personal knowledge of the Omaha Police Department in rendering her decision. And we find no error in the court identifying the page on which certain communication existed when the exhibit referenced contained over 820 pages. Accordingly, we conclude that the district court did not abuse its discretion when it denied Nicola's motion for recusal or disqualification.

### 3. GRANTING GIDGET SOLE PHYSICAL CUSTODY

Nicola assigns that the district court erred in granting Gidget sole physical custody of the minor children because Gidget failed to show the modification was in the best interests of the minor children. He argues that the evidence demonstrated that the parties' communications were consistently demeaning and disparaging in the Our Family Wizard program and that the primary source of conflict between the parties was Nicola's change in work hours where he could not maintain a schedule of consistent days off for his parenting time.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. *Tilson v. Tilson, supra*. Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021).

At a hearing post-trial, the district court stated that it found a material change in circumstances in Nicola's work schedule not corresponding to the representation he made during the dissolution trial and upon which parenting time was awarded in the amended decree. The district court noted that Nicola had testified at the dissolution trial that he would be maintaining his current "C" shift on the beat card, working a 4-3 schedule, but that the evidence at the modification hearing was that he bid on other shifts that would not allow him to maintain that schedule. His current work schedule did not accommodate his availability to be with children during the parenting time awarded in the amended decree. Consequently, the court found a material change in circumstances and we find no abuse of discretion in that finding.

Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) states:

> In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and: (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing; (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning; (c) The general health, welfare, and social behavior of the minor child; (d) Credible evidence of abuse inflicted on any family or household member; and (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

The evidence revealed that although the children have a relationship with both parents, they spend a substantial amount of time alone during Nicola's parenting time when he is at work. This is not an ideal situation and one which Gidget perceives as unsafe. The district court found it was in the best interests of the children to align Nicola's parenting time with his days off so that the minor children were not left unsupervised for extended periods of time. After reviewing the testimony of Gidget, Nicola, and the in camera testimony of the minor child, we agree that it is in the children's best interest that Gidget be granted sole physical custody. We find no abuse of discretion in the district court's order modifying physical custody.

#### 4. RETROACTIVE APPLICATION OF CHILD SUPPORT MODIFICATION

Nicola assigns that the district court erred when ordering him to pay retroactive child support because the parties had joint physical custody until entry of the order of modification. Nicola argues he has been providing child support in accordance with the prior order and the modification order was not effective until after the trial.

We have stated that absent equities to the contrary, child support modifications should generally apply retroactively to the first day of the month following the complaint's filing. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). We therefore reject Nicola's argument that the court erred in ordering retroactive child support to a date that preceded the modification order. We also reject his argument that the award should not have been retroactive because he had been providing support in accordance with the prior support order. The evidence was clear that he had not consistently exercised all of the parenting time that was awarded in the amended decree, including a significant amount of time during the pandemic, yet he did not provide any additional support for the children. In reinstating the retroactive child support award, the district court noted that Nicola admitted to not exercising all of his parenting time due to his work schedule and the pandemic. The district court did not award attorney fees to Gidget due in part to the large amount of retroactive support and balancing the equities of the financial circumstances of the parties. We find that the district court did not abuse its discretion in ordering retroactive child support.

Nicola also argues that the district court erred in not utilizing Worksheet #3 to compute child support. He does not assign this as error. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020). Because Nicola has not done so, we do not address this issue.

### VI. CONCLUSION

We conclude that the district court did not abuse its discretion in allowing the minor child to testify in camera, in relying in part on the child's testimony, in denying Nicola's posttrial motions, in modifying the physical custody award, or in ordering the child support modification to apply retroactively. Accordingly, the district court's order is affirmed.

AFFIRMED.